## 42IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | |
|---|---|
| **EMMA N. HARRIS,** <br> 27701 Belgian Way <br> Salisbury, MD 21804 <br><br> **Plaintiff** <br><br> v. <br><br> **HARBOR FREIGHT TOOLS USA, INC.** <br> 26677 Agoura Road <br> Calabasas, CA 91302 <br>    **SERVE:** <br>       Corporate Creations <br>       Network Inc. <br>       2 Wisconsin Cir., #700 <br>       Chevy Chase, MD 20815* <br><br> **Defendant** | * <br><br> * <br><br> * Civil Action No. _____ <br><br> * <br><br> * <br><br> * <br><br> * <br><br> * <br><br> * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

Plaintiff Emma N. Harris ("Ms. Harris") through counsel makes this Complaint against her former employer, Harbor Freight Tools USA, Inc., ("HF"). She asserts claims of disability discrimination, failure to accommodate and retaliation pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 2101 and Md. Code Ann. State Gov't. § 20-606 ("MFEPA"). She also asserts a claim for violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601. Ms. Harris seeks declaratory and injunctive relief, compensatory damages, liquidated damages, punitive damages and an award of attorneys' fees and costs.

1

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 in that this action asserts violations of rights secured by the laws of the United States. The Court has pendant jurisdiction over the related claims under state law.

2. Venue is proper in this Court in accordance with 28 U.S.C. § 1391(b), as the events giving rise to Plaintiff's claims occurred in the District of Maryland, and there is no other district in which this action may be brought.

3. Plaintiff timely filed a charge with the Federal Equal Employment Opportunity Commission, who issued a Notice of Right to Sue May 14, 2024; a copy is attached as Exhibit A. Plaintiff brings this action within ninety (90) days thereafter.

## PARTIES

4. Ms. Harris resides in Wicomico County. During the events giving rise to this suit, she was employed by HF at its retail store located at 2423 North Salisbury Boulevard, Salisbury, Maryland.

5. HF is a California corporation with its principal place of business in that state. It is qualified to do business in Maryland, and maintains multiple stores here, including the one in Salisbury. HF sells tools and hardware to consumers through sales personnel such as Ms. Harris.

## FACTS COMMON TO ALL COUNTS

6. Ms. Harris was hired as a clerk/cashier February 14, 2020. Her duties were to operate a cash register and wait on customers. During the interview process, she disclosed she suffered from glycogen storage disease (type 1A), a

genetic illness that causes low blood sugar; Ms. Harris explained that while she had learned to manage her symptoms, which included chronic fatigue and disorientation, they would occasionally necessitate accommodation.

7. Ms. Harris was an exemplary employee, and was never counseled, disciplined, or given a poor evaluation. She was employed without incident until October 18, 2022, when her manager, Frank Antos, called Ms. Harris into the office to "talk about [her] illness". Mr. Antos then proceeded to harangue her about her disability and its consequences: "On the personal side, I feel bad for you, but on the business side, your disease is bad for business. You're going to have an uphill battle working and having a career with your disease. Your disease makes you unreliable and everyone I've ever worked with that has had diabetes or an illness has been able to fix their health faster than you. I hope you outgrow your disease; I understand your whole life has been a struggle with your disease, but you still have a lot more struggles to go through because of it."

8. Ms. Harris promptly reported the incident to the HR office and was assured by HR representative William Miller that Mr. Antos would be counseled and there would be no repercussions for her. Shortly thereafter, Mr. Antos denied Ms. Harris a weekend off for pretextual reasons, but, more significantly, sabotaged her ability to address medical emergencies by misclassifying planned, approved vacation as "sick leave". Although the HR office acknowledged Mr. Antos' retaliatory actions were improper and left her with virtually no available sick leave, "nothing could be done" because "it was from another pay period".

9. Despite Ms. Harris' mistreatment, she elected to continue working for Harbor Freight, in part because Mr. Antos was replaced by a new manager, Kelly Byrnes. In light of her difficulties with Mr. Antos, Ms. Harris proactively reached out to Ms. Byrnes, briefing her on Ms. Harris' disability and the occasional need for accommodation; Ms. Byrnes responded that Ms. Harris "was a great employee" and "there should be no problems". Indeed, Ms. Harris' work-life proceeded smoothly, and in July 2023 received a "hardhat award" for "hard work and commitment".

10. On August 22, 2023, Ms. Harris overslept, and soon determined it had occurred due to a recurrence of her disabling medical condition. Ms. Harris had passed out due to low blood sugar and woke shortly after 8:00am. Ms. Harris could not safely drive or otherwise function without first elevating her blood sugar, which she facilitated by ingesting glucose packets. As soon as Ms. Harris was able to speak coherently, she called Ms. Byrnes, explained what had happened, and offered either to come in as soon as her blood sugar had sufficiently elevated, or to apply pre-approved intermittent FMLA leave to take the day off. Ms. Byrnes replied, "You can still come in and we can find something for you to do—don't worry about it." Accordingly, Ms. Harris went to work as soon as she achieved a safe glucose level, and had a successful day, selling the most ITC memberships of anyone in the store.

11. Ms. Harris' next assigned workday was August 25. Upon reporting, she was summoned to the office and informed by Ms. Byrnes she had been put on administrative leave without pay for a week because of two "tardies" within a

six-month period, including the August 22 incident. Ms. Harris was devastated and initiated mental health counseling to assist in addressing her disability-based mistreatment. (The counselor placed Ms. Harris on a twice-a-week schedule and prescribed her anti-anxiety medication.) Not long thereafter, Ms. Harris received correspondence from the HR office dated August 28 terminating her "for excessive absences/tardy".

12. As a direct and proximate result of her wrongful termination, Ms. Harris has lost wages and incurred other economic losses. Moreover, she has suffered severe emotional distress accompanied by physical symptoms.

13. HF's wrongful actions against Ms. Harris were taken in reckless disregard of her Federally protected rights.

## COUNT I
## DISABILITY DISCRIMINATION
## 42 U.S.C. § 2101 (ADA) & Md Code Ann., State Gov't, § 20-602 (MFEPA)

14. The facts alleged above are incorporated by reference.

15. HF fired Ms. Harris because she was disabled, even though she met her employer's legitimate workplace expectations and required minimal accommodation.

16. Ms. Harris' discriminatory termination proximately caused the harm, losses and damages she has alleged.

## COUNT II
## FAILURE TO ACCOMMODATE
## 42 U.S.C. § 2101 (ADA) & Md Code Ann., State Gov't, § 20-602 (MFEPA)

17. The facts alleged above are incorporated by reference.

18. HF knew of Ms. Harris' disability and its potential workplace complications when Ms. Harris was hired. Those complications were minor and could easily have been accommodated by allowing Ms. Harris to come to work late on occasion, for which she had approved intermittent FMLA leave.

19. However, HF withheld accommodation and exploited Ms. Harris' occasional tardiness as a pretext for firing her. HF's failure to accommodate Ms. Harris proximately caused the harm, losses and damages she has alleged.

## COUNT III
## RETALIATION
## 42 U.S.C. § 2101 (ADA) & Md Code Ann., State Gov't, § 20-602 (MFEPA)

20. The facts alleged above are incorporated by reference.

21. Ms. Harris's objectively reasonable complaint of disability-based harassment by her manager prompted workplace retaliation by HF culminating in her termination.

22. Ms. Harris's retaliatory termination proximately caused the harm, losses and damages she has alleged.

## COUNT IV
## FMLA VIOLATION

23. The facts alleged above are incorporated by reference.

24. Although Ms. Harris had pre-approved intermittent FMLA leave available to cover her tardiness or absence, her manager instructed her not to use it and then fired her for being late, in willful violation of the requirement extended by the FMLA that leave be available to cover exigent medical circumstances arising from a serious health condition.

25. HF's willful FMLA violation proximately caused the harm, losses and damages Ms. Harris has alleged, and entitles her to liquidated damages of twice her economic losses.

## PRAYERS FOR RELIEF

WHEREUPON Ms. Harris prays this Honorable Court grant the following relief:

A. Enter a declaratory judgment HF violated Ms. Harris's rights under the laws of the United States;

B. Enter a judgment in favor of Ms. Harris and against HF for compensatory damages;

C. Enter a judgment in favor of Ms. Harris and against HF for punitive damages;

D. Enter a judgment in favor of Ms. Harris and against HF for twice her economic losses;

E. Assess reasonable attorneys' fees and costs of suit in favor of Ms. Harris and against HF; and

F. Grant Ms. Harris such other and further relief as the nature of her cause may warrant.

ROBIN R. COCKEY, Fed. Bar No.02657
ASHLEY A. BOSCHÉ, Fed. Bar No. 28800
Cockey, Brennan & Maloney, PC
313 Lemmon Hill Lane
Salisbury, MD 21801
410-546-1750
Fax: 410-546-1811
rrcesq@cbmlawfirm.com
bosche@cbmlawfirm.com
*Attorneys for Plaintiff*